**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MATTHEW WHITFIELD,<br><br>Plaintiff,<br><br>v.<br><br>VMWARE, INC., NICOLE ANASENES, ANTHONY BATES, MARIANNE BROWN, MICHAEL BROWN, MICHAEL DELL, KENNETH DENMAN, EGON DURBAN, KAREN DYKSTRA, RAGHU RAGHURAM, and PAUL SAGAN,<br><br>Defendants. | Case No. ___________<br><br>JURY TRIAL DEMANDED |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. This action stems from a proposed transaction announced on May 26, 2022 (the "Proposed Transaction"), pursuant to which VMware, Inc. ("VMware" or the "Company") will be acquired by Broadcom Inc. ("Parent").

2. On May 26, 2022, VMware's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into a merger agreement (the "Merger Agreement") with Parent, Verona Holdco, Inc. ("Holdco"), Verona Merger Sub, Inc. ("Merger Sub 1"), Barcelona Merger Sub 2, Inc. ("Merger Sub 2"), and Barcelona Merger Sub 3, LLC ("Merger Sub 3"). Pursuant to the terms of the Merger Agreement, VMware's stockholders will receive either $142.50 in cash or 0.2520 shares of Broadcom common stock for each VMware share they own.

3. On July 15, 2022, defendants filed a registration statement (the "Registration Statement") with the United States Securities and Exchange Commission (the "SEC") in connection with the Proposed Transaction.

4. The Registration Statement omits material information with respect to the Proposed Transaction, which renders the Registration Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Registration Statement.

**JURISDICTION AND VENUE**

5. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391(b) because a portion of the transactions and wrongs complained of herein occurred in this District.

**PARTIES**

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of VMware common stock.

9. Defendant VMware is a Delaware corporation and a party to the Merger Agreement. VMware's common stock is traded on the NYSE, which is headquartered in New York, New York, under the ticker symbol "VMW."

10. Defendant Nicole Anasenes is a director of the Company.

11. Defendant Anthony Bates is a director of the Company.

12. Defendant Marianne Brown is a director of the Company.

13. Defendant Michael Brown is a director of the Company.

14. Defendant Michael Dell is a director and Chairman of the board of the Company.

15. Defendant Kenneth Denman is a director of the Company.

16. Defendant Egon Durban is a director of the Company.

17. Defendant Karen Dyksra is a director of the Company.

18. Defendant Raghu Raghuram is a director and Chief Executive Officer of the Company.

19. Defendant Paul Sagan is a director of the Company.

20. The defendants identified in paragraphs 10 through 19 are collectively referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

***Background of the Company and the Proposed Transaction***

21. VMware is a leading provider of multi-cloud services for all apps, enabling digital innovation with enterprise control.

22. On May 26, 2022, VMware's Board caused the Company to enter into the Merger Agreement.

23. Pursuant to the terms of the Merger Agreement, VMware's stockholders will receive either $142.50 in cash or 0.2520 shares of Broadcom common stock for each VMware share they own.

24. According to the press release announcing the Proposed Transaction:

Broadcom Inc. (NASDAQ: AVGO), a global technology leader that designs, develops and supplies semiconductor and infrastructure software solutions, and VMware, Inc. (NYSE: VMW), a leading innovator in enterprise software, today announced an agreement under which Broadcom will acquire all of the outstanding shares of VMware in a cash-and-stock transaction that values VMware at approximately $61 billion, based on the closing price of Broadcom common stock on May 25, 2022. In addition, Broadcom will assume $8 billion of VMware net debt.

VMware, a leading provider of multi-cloud services for all apps, pioneered virtualization technology, an innovation that positively transformed x86 server-based computing. VMware then created the software-defined data center and played a leading role in virtualizing networking and storage, before evolving to become a hybrid cloud and digital workspace leader. Today, VMware's multi-cloud portfolio, spanning application modernization, cloud management, cloud infrastructure, networking, security and anywhere workspaces, forms a flexible, consistent digital foundation on which the largest and most dynamic enterprises across industries build, run, manage, connect and protect their most important and complex workloads for the benefit of their customers.

Following the closing of the transaction, the Broadcom Software Group will rebrand and operate as VMware, incorporating Broadcom's existing infrastructure and security software solutions as part of an expanded VMware portfolio.

By bringing together the complementary Broadcom Software portfolio with the leading VMware platform, the combined company will provide enterprise customers an expanded platform of critical infrastructure solutions to accelerate innovation and address the most complex information technology infrastructure needs. The combined solutions will enable customers, including leaders in all industry verticals, greater choice and flexibility to build, run, manage, connect and protect applications at scale across diversified, distributed environments, regardless of where they run: from the data center, to any cloud and to edge-computing. With the combined company's shared focus on technology innovation and significant research and development expenditures, Broadcom will deliver compelling benefits for customers and partners.

Hock Tan, President and Chief Executive Officer of Broadcom, said, "Building upon our proven track record of successful M&A, this transaction combines our leading semiconductor and infrastructure software businesses with an iconic pioneer and innovator in enterprise software as we reimagine what we can deliver to customers as a leading infrastructure technology company. We look forward to VMware's talented team joining Broadcom, further cultivating a shared culture of innovation and driving even greater value for our combined stakeholders, including both sets of shareholders."

Raghu Raghuram, Chief Executive Officer of VMware, said, "VMware has been reshaping the IT landscape for the past 24 years, helping our customers become digital businesses. We stand for innovation and unwavering support of our customers and their most important business operations and now we are extending our commitment to exceptional service and innovation by becoming the new software platform for Broadcom. Combining our assets and talented team with Broadcom's existing enterprise software portfolio, all housed under the VMware brand, creates a remarkable enterprise software player. Collectively, we will deliver even more choice, value and innovation to customers, enabling them to thrive in this increasingly complex multi-cloud era."

Tom Krause, President of the Broadcom Software Group, said, "VMware has long been recognized for its enterprise software leadership, and through this transaction we will provide customers worldwide with the next generation of infrastructure software. VMware's platform and Broadcom's infrastructure software solutions address different but important enterprise needs, and the combined company will be able to serve them more effectively and securely. We have deep respect for VMware's customer focus and innovation track record, and look forward to bringing together our two organizations."

Michael Dell, Chairman of the VMware Board, said, "Together with Broadcom, VMware will be even better positioned to deliver valuable, innovative solutions to even more of the world's largest enterprises. This is a landmark moment for VMware and provides our shareholders and employees with the opportunity to participate in meaningful upside."

The transaction is expected to add approximately $8.5 billion of pro forma EBITDA from the acquisition within three years post-closing. Pro forma for each company's fiscal year 2021, software revenue is expected to account for approximately 49% of total Broadcom revenue.

Transaction Details and Path to Completion
Under the terms of the agreement, which has been unanimously approved by the boards of directors of both companies, VMware shareholders will elect to receive either $142.50 in cash or 0.2520 shares of Broadcom common stock for each VMware share. The shareholder election will be subject to proration, resulting in approximately 50% of VMware's shares being exchanged for cash consideration and 50% being exchanged for Broadcom common stock. Based on the closing price of Broadcom common stock on May 25, 2022, the total $138.23 per-share consideration represents a 44% premium to the closing price of VMware common stock on May 20, 2022, the last trading day prior to media speculation regarding a potential transaction, and a 32% premium to VMware's unaffected 30-day volume weighted average price (VWAP). Upon closing of the transaction, based on the outstanding shares of each company as of the date hereof, current Broadcom shareholders will own approximately 88% and current VMware shareholders will own approximately 12% of the combined company on a fully diluted basis.

> Michael Dell and Silver Lake, which own 40.2% and 10% of VMware shares outstanding, respectively, have signed support agreements to vote in favor of the transaction, so long as the VMware Board continues to recommend the proposed transaction with Broadcom.
>
> In connection with the transaction, Broadcom obtained commitments from a consortium of banks for $32 billion in new, fully committed debt financing.
>
> Broadcom expects to maintain its current dividend policy of delivering 50% of its prior fiscal year free cash flow to shareholders. Broadcom expects to maintain an investment grade rating, given its strong cash flow generation and intention to rapidly de-lever.
>
> The transaction, which is expected to be completed in Broadcom's fiscal year 2023, is subject to the receipt of regulatory approvals and other customary closing conditions, including approval by VMware shareholders.
>
> The merger agreement provides for a "go-shop" provision under which VMware and its Board of Directors may actively solicit, receive, evaluate and potentially enter negotiations with parties that offer alternative proposals during a 40-day period following the execution date of the definitive agreement, expiring at 11:59 p.m. Pacific Time on July 5, 2022. There can be no assurance this process will result in a superior proposal. VMware does not intend to disclose developments about this process unless and until its Board of Directors has made a decision with respect to any potential superior proposal. . . .
>
> Advisors
> Barclays Capital Inc., BofA Securities, Inc., Citigroup Global Markets Inc., Credit Suisse Securities (USA) LLC, Morgan Stanley & Co. LLC and Wells Fargo Securities, LLC are serving as financial advisors to Broadcom. Wachtell, Lipton, Rosen & Katz and O'Melveny & Myers LLP are serving as legal counsel to Broadcom, and Cleary Gottlieb Steen & Hamilton LLP is serving as regulatory counsel.
>
> Goldman Sachs & Co. LLC and J.P. Morgan Securities LLC are serving as financial advisors to VMware, and Gibson, Dunn & Crutcher LLP is serving as legal counsel.

***The Registration Statement Omits Material Information, Rendering It False and Misleading***

25. Defendants filed the Registration Statement with the SEC in connection with the Proposed Transaction.

26. As set forth below, the Registration Statement omits material information.

27. First, the Registration Statement omits material information regarding the Company's and Parent's financial projections.

28. The Registration Statement fails to disclose: (i) all line items used to calculate the financial projections; and (ii) a reconciliation of all non-GAAP to GAAP metrics.

29. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

30. Second, the Registration Statement omits material information regarding the analyses performed by the Company's financial advisors, Goldman Sachs & Co. LLC ("Goldman Sachs") and J.P. Morgan Securities LLC ("J.P. Morgan").

31. With respect to Goldman Sachs' Illustrative Discounted Cash Flow Analysis, the Registration Statement fails to disclose: (i) the terminal values used in the analysis; (ii) the individual inputs and assumptions underlying the discount rates and perpetuity growth rates used in the analysis; (iii) the total debt, cash, and cash equivalents used in the analysis; and (iv) the fully diluted shares outstanding used in the analysis.

32. With respect to Goldman Sachs' Illustrative Present Value of Future Share Price Analysis, the Registration Statement fails to disclose: (i) the individual inputs and assumptions underlying the discount rate and multiples used in the analysis; (ii) the total debt, cash, and cash equivalents used in the analysis; and (iii) the fully diluted shares outstanding used in the analysis

33. With respect to Goldman Sachs' Selected Precedent Transactions Analysis, the Registration Statement fails to disclose: (i) the closing dates of the transactions; and (ii) the total values of the transactions.

34. With respect to Goldman Sachs' Premia Paid Analysis, the Registration Statement fails to disclose: (i) the transactions observed in the analysis; and (ii) the premiums paid in the transactions.

35. With respect to J.P. Morgan's Public Trading Multiples Analysis of VMWare, the Registration Statement fails to disclose the individual multiples and metrics for the companies.

36. With respect to J.P. Morgan's Selected Transaction Multiples Analysis, the Registration Statement fails to disclose the individual multiples and metrics for the transactions.

37. With respect to J.P. Morgan's Discounted Cash Flow Analysis of VMWare, the Registration Statement fails to disclose: (i) the terminal values used in the analysis; (ii) the individual inputs and assumptions underlying the discount rates and terminal growth rates used in the analysis; (iii) the net debt used in the analysis; and (iv) the fully diluted shares outstanding used in the analysis.

38. With respect to J.P. Morgan's Public Trading Multiples Analysis of Broadcom, the Registration Statement fails to disclose the individual multiples and metrics for the companies.

39. With respect to J.P. Morgan's Discounted Cash Flow Analysis of Broadcom, the Registration Statement fails to disclose: (i) the terminal values used in the analysis; (ii) the individual inputs and assumptions underlying the discount rates and terminal growth rates used in the analysis; (iii) the net debt used in the analysis; and (iv) the fully diluted shares outstanding used in the analysis.

40. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

41. The omission of the above-referenced material information renders the Registration Statement false and misleading.

42. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

**COUNT I**

**Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and VMware**

43. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

44. The Individual Defendants disseminated the false and misleading Registration Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. VMware is liable as the issuer of these statements.

45. The Registration Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Registration Statement.

46. The Individual Defendants were at least negligent in filing the Registration Statement with these materially false and misleading statements.

47. The omissions and false and misleading statements in the Registration Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Registration Statement and in other information reasonably available to stockholders.

48. The Registration Statement is an essential link in causing plaintiff to approve the Proposed Transaction.

49. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

50. Because of the false and misleading statements in the Registration Statement, plaintiff is threatened with irreparable harm.

## COUNT II

**Claim for Violation of Section 20(a) of the 1934 Act**
**Against the Individual Defendants**

51. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

52. The Individual Defendants acted as controlling persons of VMware within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of VMware and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

53. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

54. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged

herein, and exercised the same. The Registration Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Registration Statement.

55. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the 1934 Act.

56. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff is threatened with irreparable harm.

**PRAYER FOR RELIEF**

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: August 1, 2022

**RIGRODSKY LAW, P.A.**

By: */s/ Gina M. Serra*

Gina M. Serra
825 East Gate Boulevard, Suite 300
Garden City, NY 11530
Telephone: (516) 683-3516
Email: gms@rl-legal.com

*Attorneys for Plaintiff*